<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RILEY KERKHOFF,<br><br>      Plaintiff,<br><br> v.<br><br>EZRICARE, LLC, et al.,<br><br>      Defendants. | Civil Action No. 23-01652 (GC) (RLS)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

  This matter comes before the Court upon Defendants EzriCare, LLC's, EzriRx, LLC's, and Amazon.com, Inc.'s motions to dismiss Plaintiff Riley Kerkhoff's complaint. (ECF Nos. 36, 41, 42, 43.) Kerkhoff opposed, and Moving Defendants replied. (ECF Nos. 44 to 49.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Amazon's motion is **GRANTED**, EzriRx's motion is **DENIED**, and EzriCare's motion is **GRANTED** in part and **DENIED** in part.

**I.  BACKGROUND**

  Kerkhoff, a Minnesota citizen, claims that her eye became infected with pseudomonas aeruginosa bacteria after using EzriCare artificial tears that she purchased from EzriCare on Amazon.com and used in Minnesota. (ECF No. 36 ¶¶ 2-3, 11-12.)

  Kerkhoff sues EzriCare, the New Jersey-based company that sold her the product; EzriRx, another New Jersey-based company, which allegedly participated in the supply chain; Global

Pharma Healthcare Private Ltd., the Indian-based corporation that designed, manufactured, and packaged the product (ECF No. 42-1 at 8[1]); and Amazon, the online platform where Kerkhoff purchased the product.[2] (ECF No. 36 ¶ 6.)

In a 14-count complaint, Kerkhoff asserts claims for strict liability for failure to warn against all Defendants (Count One); strict liability for design or manufacturing defect against EzriCare, EzriRx, and Global Pharma (Count Two); negligence or gross negligence against all Defendants (Count Three); products liability negligence for failure to warn against all Defendants (Count Four); products liability negligence for design or manufacturing defect against EzriCare, EzriRx, and Global Pharma (Count Five); negligent misrepresentation or omission against all Defendants (Count Six); fraud against all Defendants (Count Seven); fraudulent concealment against all Defendants (Count Eight); breach of express warranty against all Defendants (Count Nine); breach of implied warranty (Count Ten); negligent failure to timely recall against all Defendants (Count Eleven); violations of New Jersey's Consumer Fraud Act (NJCFA), N.J. Stat. Ann. § 56:8-2, against EzriCare and EzriRx (Count Twelve); punitive damages against all Defendants (Count Thirteen); and violations of the New Jersey Products Liability Act (NJPLA), N.J. Stat. Ann. § 2A:58C-1, against all Defendants (Count Fourteen). (ECF No. 36.)

Amazon, EzriCare, and EzriRx each moved to dismiss. Amazon argues that it is not subject to personal jurisdiction in New Jersey. (ECF No. 41.) EzriRx argues that Kerkhoff lacks sufficient standing against EzriRx and, even so, Kerkhoff fails to state a claim against EzriRx. (ECF No. 43.) And EzriCare argues that (1) Kerkhoff's complaint is insufficient on its face, (2) Kerkhoff's product liability claims are subsumed by the New Jersey Product Liability Act (NJPLA), (3)

---

[1]  Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[2]  The Court has diversity-based subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1).

Kerkhoff fails to sufficiently plead a claim for breach of express warranty, and (4) Kerkhoff fails to sufficiently plead a claim under the NJPLA. (ECF No. 42.)[3]

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)—Lack of Subject-Matter Jurisdiction

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *See* Fed. R. Civ. P. 12(b)(1). A motion to dismiss for want of standing is properly brought under Rule 12(b)(1), because "standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). On a motion to dismiss for lack of standing, plaintiff "bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (citations and internal quotation marks omitted); *see also Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021) (confirming that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief they seek . . . with the manner and degree of evidence required at the successive stages of the litigation").

In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to

---

[3] EzriRx joins in EzriCare's motion to dismiss. (ECF No. 43-1 at 5 n.1.)

'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.*; *see Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (noting that a motion "supported by a sworn statement of facts . . . must be construed as a factual, rather than a facial attack" (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982))). The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* (quoting *Mortensen*, 549 F.2d at 891). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268.

Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

### B.  Rule 12(b)(2)—Lack of Personal Jurisdiction

For purposes of a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence . . . , not mere allegations." *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (citation omitted); *see Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (describing

4

plaintiff's burden to prove that jurisdiction exists). When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Brainbuilders LLC v. EmblemHealth, Inc.*, Civ. No. 20-12703, 2021 WL 2025004, at *3 (D.N.J. May 21, 2021) (quoting *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016)).[4]

### C.     Rule 12(b)(6)—Failure to State a Claim

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of

---

[4]     To these ends, Amazon submits a declaration of Andy Sachs ("Sachs Decl."), senior manager of risk and policy at Amazon, at ECF No. 42-2.

"showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis*, 824 F.3d at 349).

### III.  DISCUSSION

#### A.  Amazon's Motion

Amazon moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The United States Constitution provides two ways to establish personal jurisdiction: general (i.e., "all-purpose") and specific (i.e., "case-linked"). *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Kerkhoff invokes only specific personal jurisdiction over Amazon.

For specific personal jurisdiction, three elements must be met: *first*, the defendant "purposefully directed its activities at the forum"; *second*, the litigation "arise[s] out of or relate[s] to at least one of those activities"; and *third*, the exercise of jurisdiction "comports with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007); *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021); *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). "The defendant need not be physically located in the state while committing the alleged acts." *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 528 (D.N.J. 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum." *Id.* (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984)).

Kerkhoff's premise for personal jurisdiction is that "Amazon entered into agreements to purchase EzriCare Artificial Tears from New Jersey[-]based EzriCare and/or EzriRX and purchased the Product from EzriCare and/or EzriRX, for resale to consumers." (ECF No. 36 ¶ 6.)

Amazon argues that Kerkhoff's premise is demonstrably untrue. (ECF No. 41-1 at 12-13.) "Amazon did not purchase the artificial tears from EzriCare and then resell them," nor did Amazon "acquire or transfer title to the artificial tears sold by EzriCare to Ms. Kerkhoff," according to Andy Sachs, a senior manager of risk and policy at Amazon, who claims to have "extensive personal knowledge of how Amazon's store works, the relationship between Amazon and third-party sellers, and the relative responsibilities of Amazon and third-party sellers for transactions in Amazon's store." (Sachs Decl. ¶¶ 1-2, 13.) Sachs states that the transaction records for Kerkhoff's purchase of the product show that EzriCare "s[old] the artificial tears on Amazon.com, sourced the artificial tears, held title to the artificial tears, and sold them directly to [Kerkhoff]." (ECF No. 41-1 at 12-13 (summarizing Sachs Decl. ¶¶ 6, 12, 13, Ex. A).) The transaction records also show that to fulfill the order, EzriCare used Amazon's "optional Fulfillment By Amazon (FBA) logistics service," where "Amazon simply provides storage and logistics services." (Sachs Decl. ¶¶ 6, 16-17.) Kerkhoff's EzriCare purchases, according to the records, shipped from Amazon's fulfillment center in Kansas. (*Id.* ¶ 18.)

Kerkhoff does not contest Sachs's declarations.[5] In fact, Kerkhoff asserts that Sachs's declaration shows that Amazon directed activities at New Jersey in three ways.

First, EzriCare was presumably in New Jersey when it entered the Amazon Services Business Solutions Agreement (BSA), which governs EzriCare's "access to and use of [Amazon's] services," including selling on Amazon and fulfillment by Amazon. (ECF No. 44 at 10-14; Sachs

---

[5] Because Kerkhoff does not dispute the veracity of Amazon's evidence, but only its significance, the Court need not hold an evidentiary hearing on the issue if the evidence is viewed in a light most favorable to Kerkhoff. *See Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) (requiring court to take the plaintiff's factual allegations as true and resolve all doubts in plaintiff's favor if it does not hold evidentiary hearing on personal jurisdiction).

Decl. ¶¶ 9, 16, 18; Sachs Decl. Ex. B at 1, 10, ECF No. 41-2 (all-capitalizations omitted).) But even so, "[t]he mere existence of a contract is insufficient to establish minimum contacts." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (citing *Rudzewicz*, 471 U.S. at 478); *see Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 268 (2017) ("The bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the State."). Whether a contract establishes personal jurisdiction depends on the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Budget Blinds*, 536 F.3d at 261 (quoting *Rudzewicz*, 471 U.S. at 479).

Amazon submits that it did not negotiate with EzriCare or contemplate the future consequences of EzriCare's use of Amazon's services. Sachs describes the BSA as an "electronic, click-through agreement" that third-party sellers must accept as a step in the seller account set-up process. (Sachs Decl. ¶ 9.)[6] Kerkhoff neither disputes Sachs's description nor alleges anything to the contrary. The Court therefore finds that EzriCare's assent to the BSA when setting up a seller account does not favor personal jurisdiction over Amazon. *See Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) ("When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." (citation omitted)).

Second, EzriCare's payment for Amazon's services, as well as EzriCare's shipments of inventory to Amazon's Kansas fulfillment center, came from New Jersey. (ECF No. 44 at 12-13.) But EzriCare's unilateral payments and shipments to Amazon cannot alone establish personal

---

[6]   Sachs submits that "EzriCare assented to the BSA when it registered as a seller on March 15, 2021." (Sachs Decl. ¶ 9.)

jurisdiction over Amazon.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); *see also Baanyan Software Servs., Inc. v. Kuncha*, 81 A.3d 672, 679 (N.J. Super. Ct. App. Div. 2013) ("[T]he fact that defendant received payment from Baanyan, and submitted timesheets to Baanyan, does not support a finding of personal jurisdiction as this was all done electronically and did not require any contact with New Jersey." (citing *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 555 (3d Cir. 1993))); *G&C Fab-Con, LLC v. M&S Civ. Consultants, Inc.*, Civ. No. 20-08425, 2021 WL 268177, at *5 (D.N.J. Jan. 27, 2021) ("[E]ven if the record clearly indicated that Plaintiff was processing pay applications or payments *from Defendant*, this is only one factor to consider among the totality of the circumstances.").  As a result, this basis does not favor personal jurisdiction.

Finally, under the BSA, EzriCare granted Amazon "a royalty-free, non-exclusive, worldwide right and license for the duration of [the] original and derivative intellectual property rights to use any and all of [EzriCare's] Materials for the Services or other Amazon product or service, and to sublicense the foregoing rights to [its] affiliates and operators of Amazon Associated Properties . . . ." (ECF No. 44 at 12-13 (quoting Sachs Decl. Ex. B at 2).)  The Court, however, agrees with Amazon that the BSA provision "reflects only EzriCare's unilateral choice to assent to the BSA to sell its products on Amazon.com, not any deliberate targeting of New Jersey by Amazon."  (ECF No. 49 at 8.)  *See D'Jamoos*, 566 F.3d at 104 (noting that although "efforts to exploit a national market necessarily included Pennsylvania as a target, . . . those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment of the privilege of conducting activities in that state").

9

Kerkhoff asks for jurisdictional discovery so that she can investigate (1) the office location of "Amazon employees who brokered and contracted with New Jersey-based EzriCare," (2) whether Amazon possessed and stored EzriCare product in New Jersey, and (3) "whether any New Jersey-based third parties were involved in the transfer or storage of the EzriCare" product from EzriCare to Amazon. (ECF No. 44 at 11-12, 15.)

To get jurisdictional discovery, Kerkhoff must "present[] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236, 259 (3d Cir. 2022) (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)) (alterations in original). "[J]urisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'" *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (citation omitted); *see also Metcalfe*, 566 F.3d at 336 ("[J]urisdictional discovery particularly appropriate where the defendant is a corporation."). But a plaintiff's "bare allegations" will not justify jurisdictional discovery. *Ripp*, 49 F.4th at 259 (quoting *Eurofins Pharma*, 623 F.3d at 157).

To recap, Kerkhoff's premise for tying Amazon to New Jersey is that Amazon allowed a New Jersey-based company to sell products on its online platform, received payments from that company, and provided fulfillment services for that company from its Kansas fulfillment center. The Court is not satisfied that Kerkhoff's allegations concerning Amazon's relevant contacts with New Jersey are sufficiently particular to justify jurisdictional discovery.

Therefore, the Court dismisses the complaint against Amazon without prejudice.

### B.     EzriRx's Motion

EzriRx argues that the complaint does not allege facts establishing standing against it. (ECF No. 43-1.)  Article III standing requires "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016).  EzriRx challenges only the causal-connection element.

EzriRx argues that Kerkhoff has not and cannot plead a causal connection between her injury and EzriRx, because EzriRx operates a business-to-business sales portal—it does not sell products to consumers.  (ECF No. 43-1 at 8-9.)  In support, EzriRx submits the affidavit of Ezriel Green, the founder and chief executive officer of EzriRx.  (Green EzriRx Aff. ¶ 3, ECF No. 43-2.)[7]  Green states that "EzriRx is an online marketplace platform that assists pharmacies in purchasing prescription medications, over-the-counter drugs, and pet medication," and that "EzriRx does not sell directly to consumers."  (Green EzriRx Aff. ¶¶ 7-8.)

Kerkhoff contests that EzriRx is simply an online marketplace.  (ECF No. 46 at 10.)  She notes that Green's affidavit does not "address EzriRx's involvement in the development, manufacture, importation, marketing, labelling, and distribution (including to Walmart)[8] of the EzriCare Product."  (*Id.* at 10, 14.)  She also asserts that EzriRx and EzriCare are "essentially a single entity with respect to the EzriCare Product," given that the two entities share a CEO, phone

---

[7]     On a factual attack on subject-matter jurisdiction, such as EzriRx's, "the court may consider evidence 'outside the pleadings,' including 'affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction.'" *Fort v. United States*, Civ. No. 22-583, --- F. Supp. 3d ----, 2024 WL 228935, at *6 (D.N.J. Jan. 22, 2024) (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014); then *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)).

[8]     Kerkhoff, who alleges that she purchased the artificial tears on Amazon.com, does not elaborate on why EzriRx's alleged distribution to Walmart is relevant.

numbers, and counsel in this litigation; both "were responsible for bringing the EzriCare Product to market"; and "EzriRx is the registered and licensed owner of the trademark 'EzriCare.'" (*Id.* at 15; ECF No. 36 ¶¶ 16-18.)  "Thus, for purposes of liability in this case," Kerkhoff contends, "EzriCare LLC and EzriRx LLC may properly be considered as one." (ECF No. 46 at 16.)

The Court disagrees with Kerkhoff's alter-ego theory of liability.  Entities' sharing leadership, contact information, and counsel does not alone justify disregarding their corporate separateness.  *See Mikhail v. Amarin Corp., plc*, Civ. No. 23-01856, 2024 WL 863427, at *6-8 (D.N.J. Feb. 29, 2024) (discussing the standard for disregarding corporate separateness).  The Court cannot disregard the EzriRx's and EzriCare's separateness on these grounds.

On the other hand, the Court finds that the complaint includes enough allegations from which the Court could infer a plausible causal connection between Kerkhoff's injury and EzriRx's conduct.  As to EzriRx's involvement, the complaint alleges that EzriRx "markets, advertises, labels, distributes, and sells" EzriCare's artificial tears; "'EzriCare' is a trademark registered and licensed to" EzriRx; and "EzriCare and EzriRx are interrelated entities which share leadership, a phone number, and a website." (ECF No. 36 ¶¶ 16-18 (cleaned up).)  Those allegations explain EzriRx's connection with EzriCare and the product.  They imply the way in which EzriRx may be involved in the design, labeling, advertising, or distribution of a product that made its way to Kerkhoff.  The Court too observes that Green's affidavit does not address this issue.  So although Kerkhoff, faced with a factual challenge on subject-matter jurisdiction, does not enjoy Rule 12(b)(6) deference, the Court finds that her pleadings clear the standing hurdle.  In the same light, EzriRx's Rule 12(b)(6) challenge asserting that the complaint does not provide "fair notice of the claim and the grounds upon which it rests" is also rejected. (ECF No. 43-1 at 10.)

EzriRx's motion to dismiss is therefore denied.

### C. EzriCare's Motion

#### 1. NJPLA Subsumption

EzriCare argues that the NJPLA subsumes Kerkhoff's common-law products-liability claims. (ECF No. 42-1.) Kerkhoff counters that on NJPLA subsumption, the substantive law of New Jersey may not apply here, noting that the law of Minnesota (where Kerkhoff lives) may govern, but it is too early to tell. (ECF No. 45 at 16-17.)

Although "it can be inappropriate or impossible for a court to conduct [a choice of law] analysis at the motion to dismiss stage when little or no discovery has taken place[,] . . . [s]ome choice of law issues may not require a full factual record and may be amenable to resolution on a motion to dismiss." *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 499 (D.N.J. 2014) (quoting *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011)) (most alterations in *Rapid Models*).

On the present record, the Court finds that it would be inappropriate to conduct a choice-of-law analysis at this stage. EzriCare notes that in products liability cases, "Minnesota merges negligence and strict liability claims into a single products liability theory." (ECF No. 42-1 at 17 n.12.) To the extent that conflicts exist (or do not exist) between the law of New Jersey and Minnesota, the parties' motion papers do not conduct a choice-of-law analysis for the Court's review. Nor do they provide the information necessary for the Court to perform its own analysis. So the Court will refrain from doing so. The Court therefore rejects EzriCare's NJPLA subsumption argument without prejudice to EzriCare's renewing the argument later.

#### 2. Express Warranty Claim

Count Nine asserts a claim for breach of express warranty. To state a claim for breach of express warranty under New Jersey law, a plaintiff must allege that (1) "Defendant made an

13

affirmation, promise or description about the product;" (2) "this affirmation, promise or description became part of the basis of the bargain for the product;" and (3) "the product ultimately did not conform to the affirmation, promise or description." *Hindermyer v. B. Braun Med Inc.*, 419 F. Supp. 3d 809, 829-30 (D.N.J. 2019) (quoting *Snyder*, 792 F. Supp. 2d at 721. The New Jersey U.C.C. defines an "express warranty" as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> [N.J. Stat. Ann. § 12A:2-313(1).]

Kerkhoff argues that "the EzriCare Product was presumed to be uncontaminated by the language included on the label." (ECF No. 45 at 19.) The complaint includes a copy of the product's label, but it does not specify which part of the label constitutes the express warranty alleged. (ECF No. 36 ¶ 7.) The complaint also alleges that Kerkhoff "read and relied on these express warranties provided by Defendants in the labeling, packaging, and advertisements." (*Id.* ¶ 135.)

In her opposition papers, Kerkhoff implies that the label's description of the product's "Uses" as "a protectant against further irritation . . . of the eye" and "for temporary relief of discomfort due to minor irritations of the eye" was the express warranty alleged. (ECF No. 45 at 15.) But "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). Besides, courts in this Circuit have refused to find that user instructions, or even labels representing that a product is "safe and effective," are express warranties. *See In re Avandia Mktg.*

14

*Sales Pracs. & Prod. Liab. Litig.*, 588 F. App'x 171, 176-78 (3d Cir. 2014) (noting approvingly that an Ohio court "refused to find the words 'safe and effective' to create an express warranty in the absence of representations that a drug was free from all harmful side effects or was absolutely harmless"); *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 421 (D.N.J. 2016) (rejecting that instructions in the owner's manual constituted an express warranty that the product would be "free from defects in material and workmanship and fit for the ordinary purpose" of the product). Also relevant is that the EzraCare product label qualifies itself, warning users to "[s]top use and ask a doctor if you experience" "eye pain," "changes in vision," or "continued redness or irritation of the eye or if the condition worsens or persists for more than 72 hours." (ECF No. 36 ¶ 7.) *See In re Avandia*, 588 F. App'x at 178 ("Because GSK disclosed Avandia's contraindications, risk factors, and potential side effects and D'Apuzzo does not allege GSK made unqualified guarantees of safety or effectiveness, D'Apuzzo has failed as a matter of New Jersey law to state an express warranty claim.").

Thus, the Court finds that Kerkhoff does not state a claim for breach of express warranty.

    3.    <u>NJPLA Claim</u>

Count Fourteen asserts NJPLA violations for the defective design and manufacturing of EzriCare artificial tears. (ECF No. 36 ¶ 198.)

To prove a defect, a plaintiff must show that "(1) the product was defective; (2) the defect existed when the product left the hands of the defendant; (3) the defect proximately caused injuries to the plaintiff; and (4) the injured plaintiff was a reasonably foreseeable user." *Hindermyer*, 419 F. Supp. 3d at 823 (citing *Myrlak v. Port Auth. of New York & New Jersey*, 723 A.2d 45, 52 (N.J. 1999)).

a. Design Defect

To establish a prima facie case of design defect, the plaintiff must prove the availability of a "technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm without substantially impairing the reasonably anticipated or intended function of the product." *Hindermyer*, 419 F. Supp. 3d at 823-24 (citation omitted). No per se rule requires a plaintiff to, "under all circumstances, provide a reasonable alternative design" at the pleadings stage. *Id.* at 824. But to state a claim for design defect under the NJPLA, the plaintiff must "plead either that the product's risk [of harm] outweighs its [utility]." *Id.* (quoting *Mendez v. Shah*, 28 F. Supp. 3d 282, 298 (D.N.J. 2014) (alterations in *Hindermyer*).

EzriCare argues that Kerkhoff merely recites the elements of a design-defect claim. The Court disagrees. Kerkhoff attributes the contamination to the "lack of appropriate microbial testing, formulation issues[,] . . . and lack of proper controls concerning tamper-evident packaging." (ECF No. 36 ¶¶ 1.) For an alternative design, she alleges that EzriCare should have formulated the product with preservatives, which "prevent the growth of bacteria in the product," or "new therapies—known as 'phage' therapies— . . . to treat antibiotic-resistant bacteria, like the *Pseudomonas Aeruginosa*[,] . . . by deploying viruses that aim to attack bacteria, fending off infections that traditional antibiotic drugs fail to stamp out." (*Id.* ¶¶ 4, 11, 50.) And as to the risk-utility element, Kerkhoff alleges that "EzriCare Artificial Tears is an inessential over-the-counter product that does not treat or cure any serious disease." (*Id.* ¶ 50.) Thinner allegations than these have survived motions to dismiss. *See, e.g.*, *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 826 (D.N.J. 2021) (denying a motion to dismiss a defective-design claim alleging that a pharmaceutical "was developed, mixed and/or created in an insanitary and unsafe environment

16

that contained or promoted the development of harmful organisms such as bacteria, which was . . . unreasonably dangerous").

Thus, Kerkhoff's claim for design defect under the NJPLA may proceed.

b. Manufacturing Defect

A manufacturing defect exists if a product "deviated from the design specification, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J. Stat. Ann. § 2A:58C-2(a). "To determine whether a product contains a manufacturing defect, the 'product may be measured against the same product as manufactured according to the manufacturer's standards.'" *Hindermyer*, 419 F. Supp. 3d at 824 (quoting *Mendez*, 28 F. Supp. 3d at 298). "If the particular product used by the plaintiff fails to conform to those standards or other units of the same kind, it is a manufacturing defect." *Id.* (quoting *Mendez*, 28 F. Supp. 3d at 298).

New Jersey products-liability law does not require the injured plaintiff "to prove a specific manufacturer's defect." *Id.* (quoting *Mendez*, 28 F. Supp. 3d at 297). "[B]ecause the evidence of a flaw in the manufacturing process is uniquely within the knowledge and control of the manufacturer, '[p]roof that a product is not fit for its intended purposes requires only proof . . . that something was wrong with the product.'" *Id.* (quoting *Myrlak*, 723 A.2d at 52) (some quotation marks omitted); *see Cole v. NIBCO, Inc.*, Civ. No. 13-7871, 2016 WL 10536025, at *16 (D.N.J. Feb. 26, 2016) ("[A] plaintiff may demonstrate that a manufacturing defect exists with evidence that in a general sense and as understood by a layman . . . 'something was wrong' with the product." (quoting *Scanlon v. Gen. Motors Corp., Chevrolet Motor Div.*, 326 A.2d 673, 677 (N.J. 1974)). That said, the "mere occurrence of an accident and the mere fact that someone was injured are not

17

sufficient to demonstrate the existence of a defect." *Hindermyer*, 419 F. Supp. 3d at 824 (quoting *Myrlak*, 723 A.2d at 52).

Based on these pleading standards, all favorable inferences, and a liberal reading of her pleadings, Kerkhoff's manufacturing-defect allegations are enough to survive a motion to dismiss. She alleges that the manufacturer failed to perform "appropriate microbial testing" and lacked "proper controls concerning tamper-evidence packaging." (ECF No. 36 ¶ 1.) She also alleges that the EzriCare product "deviated from the design specifications, formulae, or performance standards of the manufacturer," such that the product had been contaminated by the time she used it. (*Id.* ¶ 196.) As a result, the allegations create a plausible inference that the product "fail[ed] to conform to standards or other units of the same kind." *C.f. Hindermyer*, 419 F. Supp. 3d at 824

Thus, Kerkhoff's manufacturing-defect claim under the NJPLA may proceed.

### 4. NJPLA's Immunity Provision

Although product sellers are subject to liability under the NJPLA, the Act includes an immunity provision "to rescue persons it categorized as 'product sellers' from strict liability in certain circumstances." *Allstate New Jersey Ins. Co. v. Amazon.com, Inc.*, Civ. No. 17-2738, 2018 WL 3546197, at *6 (D.N.J. July 24, 2018) (quoting *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530 (D.N.J. 1999)). Thus, "by filing an affidavit correctly identifying the manufacturer of the product," a defendant seller can escape liability under the Act. *Id.*; N.J. Stat. Ann. § 2A:58C-9(b). Even when a product seller submits the affidavit certifying the correct identity of the manufacturer, a product seller may still be liable if the seller "exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage [; or]...if [t]he manufacturer has no known agents, facility, or other presence within the United States[;] or [t]he manufacturer has no

18

attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate." *Claypotch v. Heller, Inc.*, 823 A.2d 844, 852 (N.J. Super. Ct. App. Div. 2003) (quoting N.J. Stat. Ann. § 2A:58C-9(c)(2), (3), (d)(1)).  A product seller also may be subject to liability "if it 'knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage; or . . . created the defect in the product which caused the injury, death or damage.'" *Id.* (citing § 2A:58C-9(d)(2), (3)).  Therefore, "a product seller is relieved from liability only if it is 'truly innocent of responsibility for the alleged product *and* the injured party must retain a viable claim against the manufacturer.'" *Bashir v. Home Depot*, Civ. No. 08-04745, 2011 WL 3625707, at *3 (D.N.J. Aug. 16, 2011) (quoting *Claypotch*, 823 A.2d at 852) (emphasis added).

EzriCare claims to fall within the NJPLA provision of immunity because it submits an affidavit of Ezriel Green, who is also EzriCare's cofounder, stating that "EzriCare's Artificial Tears were manufactured and packaged by Global Pharma Healthcare Private Limited, whose manufacturing facility is located in Tamil Nadu, India." (Green EzriCare Aff. ¶ 4, ECF No. 42-2.)  Kerkhoff counters that the parties must engage in discovery to clarify EzriCare's role in bringing this product to market.  (ECF No. 45 at 27.)  The Court agrees—the present record does not establish that EzriCare is "truly innocent of responsibility for the alleged product" as a matter of law.

Thus, the Court rejects EzriCare's claim of immunity at this juncture.

## IV. CONCLUSION

For the reasons set forth above, and other good cause shown, Amazon's motion is **GRANTED**, EzriRx's motion is **DENIED**, and EzriCare's motion is **GRANTED** in part and **DENIED** in part. Kerkhoff's claim for breach of express warranty is **DISMISSED** without prejudice. An appropriate Order follows.

Dated: May 31, 2024

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**